IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LONIE SCOTT, JR., | ) CASE NO. 1:13-CV-99 |
| Plaintiff, | ) JUDGE JAMES S. GWIN |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| | ) KENNETH S. McHARGH |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) **REPORT & RECOMMENDATION** |
| Defendant. | ) |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lonie Scott, Jr.'s, ("Plaintiff" or "Scott") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

**I.  PROCEDURAL HISTORY**

On August 4, 2009, Scott filed an application for Supplemental Security Income benefits. (Tr. 20, 199). Plaintiff alleged he became disabled on June 9, 2009, due to suffering from Crohn's disease, plates in his left foot and right knee, and vision loss in his left eye. (Tr. 81, 235). The Social Security Administration denied Scott's application on initial review and upon reconsideration. (Tr. 83-96).

On August 6, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") to contest the denial of his application. (Tr. 96-97). The administration granted

Plaintiff's request. (Tr. 99-100). ALJ Paul Gaughen convened a hearing to evaluate Plaintiff's application on September 14, 2011. (Tr. 36-68). Scott, represented by counsel, appeared and testified before the ALJ. (Tr. 44-59). A vocational expert ("VE"), Julia Russell, also appeared and testified. (Tr. 59-66). On October 14, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 20-29). After applying the five-step sequential analysis,[1] the ALJ determined Scott retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review. (Tr. 15). The Appeals Council denied Scott's request, making the ALJ's determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's decision. Review is proper pursuant to 42 U.S.C. § 405(g).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1)  If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.
>
> (2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Scott was born on January 28, 1974, and was 35 years old on the date the application was filed. (Tr. 28, 199). Accordingly, he was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. § 416.963. Scott completed the eleventh grade. (Tr. 46). He has past work experience as a roofer, cleaner, fast food worker, and hand packager. (Tr. 59-60).

### B. Medical Evidence

#### 1. Physical

Scott suffers from Crohn's disease with periodic flare-ups. (Tr. 362, 444-45). Prior to the relevant period, Plaintiff underwent three bowel resections. (*Id.*). On June 6, 2009, Scott presented to the emergency room complaining of abdominal pain and four to five bowel movements per day. (*Id.*). Plaintiff indicated not taking medication for his Crohn's disease due to lack of insurance. (*Id.*). An x-ray was nonspecific and suggested an ileus.[2] (Tr. 445). Scott was given Cipro, Flagyl, Solu-Medrol, and Pentasa, which improved his symptoms. (*Id.*). Two days after he was admitted, Plaintiff left the hospital against medical advice, telling medical staff that he needed to be at work that evening. (*Id.*). Robert Ingle, M.D., indicated Plaintiff was in stable condition at the time of discharge and advised follow-up for medication. (*Id.*).

On July 9, 2009, Plaintiff reported to the hospital for abdominal cramping and diarrhea. (Tr. 426, 431). Scott's x-ray showed a bowel gas pattern suggestive of gastroenteritis or ileus. (Tr. 431). Roy Hood, M.D., started Plaintiff on antibiotics, as well as Pentasa for maintenance therapy of Crohn's disease. Dr. Hood opined that Scott's repeated exacerbations of Crohn's disease were due to lack of maintenance treatment and recommended that Scott apply for a free

---

[2] An ileus is a non-mechanical blockage of the small or large intestine. It is more commonly defined as a bowel obstruction.

prescription of Pentasa from a care program. (*Id.*). During the period of hospitalization, Scott's symptoms improved and he tolerated a regular diet without pain medication. (Tr. 422). Plaintiff was discharged on July 12, 2009 with a limited supply of Pentasa and advised to follow up with Dr. Hood and the Hope Clinic, a health care center providing affordable health services to the uninsured. (*Id.*).

Plaintiff treated with Dr. Hood on July 16, 2009. (Tr. 355-56). Scott complained of diarrhea with fifteen bowel movements daily. Dr. Hood observed Plaintiff was well-nourished and prescribed Prednisone and Pentasa. Concluding the visit, Dr. Hood told Scott he would petition a drug company for free Cimzia (a biologic therapy for Crohn's), and if the request was granted, Plaintiff would come to the doctor's office monthly for injections, because at that time, Plaintiff was homeless. Dr. Hood again encouraged Plaintiff to establish care at the Hope Clinic. Two months later, Plaintiff was approved to receive Cimzia for free for up to six months, at which time Plaintiff's physician would need to renew the application. (Tr. 376).

From August 2009 to July 2010, Plaintiff reported to the emergency room approximately five times for abdominal pain and diarrhea. (Tr. 408, 735, 769, 801, 811). On July 7, 2010, Darlene Edwards, R.N., wrote that Plaintiff had been self-administering Cimzia injections, which caused a rash and hair loss. (Tr. 795). She indicated that when Scott was complaint with his medication, he did not have much trouble with diarrhea. (*Id.*).

On September 13, 2010, Plaintiff presented to Roger Snyder, M.D., at Ashland Christian Health Center Multidisciplinary Pain Clinic. (Tr. 847). Dr. Snyder diagnosed Crohn's disease and refilled Scott's prescription for Percocet. Scott treated with Dr. Snyder again in December 2010 for a Crohn's flare-up. (Tr. 846). Dr. Snyder indicated that Scott was "still on Cimzia," but he complained of diarrhea five times per day. The doctor prescribed Prednisone tapers. (*Id.*).

4

Scott treated with Dale Thomae, D.O., on February 8, 2011. (Tr. 862). Plaintiff complained of seven to eight loose stools per day with cramping. He also reported stopping Cimzia and not taking other Crohn's treatment. Dr. Thomae prescribed Humira for Crohn's. (Tr. 863). On February 28, 2011, Dr. Snyder increased Plaintiff's Percocet prescription, after Plaintiff reported it was helping his pain. (Tr. 844). Dr. Snyder noted that Scott had not started the prescription for Humira, because he was not yet able to obtain it. In May 2011, Dr. Snyder noted Plaintiff started on Humira around mid-March, and Plaintiff reported no changes other than increased diarrhea. (Tr. 843). The doctor increased Plaintiff's dosage of Percocet, indicating it may also alleviate diarrhea. On August 14, 2011, Plaintiff went to the emergency room with abdominal pain. (Tr. 908). A CT scan showed the terminal and distal ileum thickened, consistent with Crohn's disease. (Tr. 914). The length of involvement of the small bowel had increased since Plaintiff's last examination in July 2010, however there were no inflammatory changes.

In February 2010, state agency physician, Saul Juliao, M.D., reviewed Plaintiff's medical records. (Tr. 745-53). He opined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work that required only occasional climbing of ladders, ropes, or scaffolds, and no concentrated exposure to temperature extremes or vibration. In July 2010, state agency physician, Jerry McCloud, M.D., conducted an independent review of Plaintiff's medical records and affirmed Dr. Juliao's RFC. (Tr. 794).

2. **Mental**

On October 13, 2009, Janice Barkley,[3] a licensed psychological examiner, performed a consultative psychological evaluation. (Tr. 600-05). Scott explained his history of treating

---

[3] Plaintiff points out that it is unclear whether Ms. Barkley is a M.D. or M.A. The signature line on Ms. Barkley's report indicates that she is a M.A. while the heading on the report states that she is a M.D. It

5

Crohn's disease, the medications he was taking, and his noncompliance with dietary restrictions. (Tr. 600). Scott reported not having a mental health history or treatment, but stated that he was depressed, did not enjoy being around people, experienced anxiety, and had anger management issues. (Tr. 602). Ms. Barkley noted that Scott's conversation was coherent and relevant, though he provided only minimal answers during the examination. She found that Plaintiff's ability to understand and remember was not significantly impaired; his concentration, persistence, and pace were good; his social interaction was moderately impaired due to lack of social contacts other than his mother; his adaptation to work qualified for a depression diagnosis; and he appeared to have an anger issue. (Tr. 605). Ms. Barkley diagnosed depressive disorder that was not otherwise specified ("NOS"), a history of depression, and ruled out anxiety disorder. (*Id.*).

In December 2009, state agency psychologist, Karen Lawrence, Ph.D., reviewed Plaintiff's medical records and opined that Scott had a number of moderate limitations. (Tr. 615-17). Even so, Dr. Lawrence found that Scott could understand and remember simple and detailed instructions; persist with simple and detailed tasks; maintain a consistent pace with a reasonable number and length of rest periods; maintain attention and concentration for at least two hours with standard breaks; relate to co-workers and supervisors for regular routines and without intensive interaction; relate to the general public on an infrequent basis; adapt to gradual and infrequent changes; and set short term goals. (Tr. 617).

In July 2010, state agency psychologist, Bonnie Katz, Ph.D., reviewed Plaintiff's medical records and adopted the mental RFC finding of the ALJ in Plaintiff's previous disability claim, which was decided in April 2009. (Tr. 792).

---

appears that the ALJ treated Ms. Barkley as a M.A. (Tr. 27), which Defendant does not contest. The Court therefore will not further address this discrepancy.

6

On August 16, 2010, Plaintiff sought mental health treatment at Appleseed Community Mental Health ("Appleseed"). (Tr. 823-33). During a session with Bill Weberling, M.A.P.C.C., Plaintiff complained of anxiety, anger/aggression, and problems sleeping. (Tr. 828-29). Scott stated that his psychological stressors were homelessness and health problems, mostly relating to Crohn's disease. (Tr. 829). Mr. Weberling diagnosed mood disorder NOS and recommended counseling and medication management services. (Tr. 832). Plaintiff continued treatment with other providers at Appleseed for mood swings, anger, and sleep issues through February 2011. (Tr. 894-95, 893, 890). January 2011 and February 2011 mental status examinations showed no significant findings. (Tr. 890, 888). On February 22, 2011, Plaintiff reported he was "not doing too bad" and his "meds seem to be ok." (Tr. 888). Mr. Weberling discharged Scott from treatment at Appleseed on May 26, 2011 for failure to return to counseling sessions. (Tr. 866). Mr. Weberling assigned a global assessment of functioning ("GAF") score of 50,[4] indicating serious symptoms. Plaintiff resumed counseling at Appleseed on July 8, 2011, at which time Mr. Weberling assigned a GAF score of 45. (Tr. 884-85).

George Pallotta, D.O., performed an initial psychiatric evaluation of Scott on July 28, 2011. (Tr. 872-74). Scott presented with anger, depression, and coping with Crohn's disease. Dr. Pallotta diagnosed major depressive disorder. (Tr. 873). A mental status examination revealed that Scott was unkempt and withdraw, but otherwise had clear speech and average eye contact. (Tr. 874). Scott did not report delusions, self-abuse, aggression, or hallucinations. The

---

[4] The GAF scale rates an individual's overall psychological functioning from 0 for inadequate information to 100 for superior functioning. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF in the range of 41-50 indicates serious symptoms (such as suicidal ideation, frequent shoplifting) *or* any serious impairment in social or occupational functioning (such as no friends, unable to keep a job). A GAF in the range of 51-60 indicates moderate symptoms (like depressed mood) *or* some difficultly in social or occupational functioning (like few friends, conflicts with peers or co-workers).

7

doctor observed Scott as depressed and anxious, but also logical, cooperative, and of average intelligence. Dr. Pallotta's prognosis was fair.

On September 1, 2011, Mr. Weberling completed a Mental Residual Functional Capacity form, finding that Plaintiff was unable to meet competitive standards in nine out of twenty-five mental abilities and aptitudes needed to do unskilled work. (Tr. 902). Mr. Weberling opined that Scott would miss more than four days of work per month. (Tr. 906).

On September 8, 2011, Dr. Pallotta completed a mental RFC form. (Tr. 897-901). Dr. Pallotta noted Scott's major depressive disorder, but also wrote that Scott's primary problem was his underlying medical condition of Crohn's. (Tr. 897). The doctor assigned a current GAF score of 60, indicating moderate to borderline mild psychological symptoms. (*Id.*). Unlike Mr. Weberling, Dr. Pallotta did not find that Plaintiff was unable to meet competitive standards in any mental ability or aptitude need to do work. (Tr. 899-900). Dr. Pallotta opined Plaintiff was "seriously limited, but not precluded" from maintaining regular attendance and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 899). The doctor opined that these limitations were due to Scott's "medical condition." (*Id.*). In all other categories, Plaintiff was "unlimited or very good." The doctor concluded that Scott would miss about three days of work per month, noting that Scott would have difficulty working a regular job on a sustained basis due to his medical condition, which the doctor identified as Crohn's disease. (Tr. 901).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since June 9, 2009, the application date.

2. The claimant has the following severe impairments: Crohn's Disease, left foot impairment, right knee impairment, and depression.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(b) except the claimant: can stand or walk for up to two hours at once and for a total of up to six hours of an eight-hour-day; requires a sit/stand option to be exercised occasionally but not at-will; cannot work in places with temperatures or humidity extremes; requires access to a bathroom; must be able to take occasional, unscheduled restroom breaks; can work at positions with a simple, predictable routine but without significant changes in the work setting; cannot work independently; can adapt to occasional and simple changes and perform routine and perfunctory social interaction, but cannot have frequent interaction with others or be required to use higher-level social functioning.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on January 28, 1974 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has a limited education and is able to communicate in English.

   . . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 9, 2009, the date the application was filed.

(Tr. 22-29) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental

9

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Scott alleges that the ALJ failed to properly evaluate the opinions of his treating psychiatrist and mental health counselor. In addition, Plaintiff maintains that the ALJ erred by relying on a hypothetical question that did not accurately incorporate his limitations. For the reasons that follow, the undersigned finds that Plaintiff's allegations do not warrant reversal.

### A. Medical Opinion Evidence

#### 1. Dr. Pallotta

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 416.927(c)(2). Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

11

relationship, the supportability of the opinion, and the physician's specialization. 20 C.F.R. § 416.927(c)(2)-(6). The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. 20 C.F.R. § 416.927(c)(2). Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (*citing King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

In his decision, the ALJ did not grant controlling weight to Dr. Pallotta's opinions, but instead granted a portion of his opinions great weight. Specifically, the ALJ credited Dr. Pallotta's diagnosis of major depressive disorder, assignment of a GAF score of 60, and the doctor's finding of moderate impairments in concentration, persistence, and pace. The ALJ did not address Dr. Pallotta's finding that Plaintiff would be absent from work three days per month. The ALJ provided no other discussion of Dr. Pallotta's opinion. Plaintiff now contests that ALJ's failure to credit Dr. Pallotta's opinion that Plaintiff would miss work three days per month and the ALJ's failure to explain why he did not credit this finding.

Usually, violations of the treating source doctrine warrant remand. *See Wilson*, 378 F.3d at 546-47. Yet, the Sixth Circuit has recognized circumstances under which the ALJ's failure to provide "good reasons" may be deemed harmless. *Id.* at 547. There are three such instances which were explicitly addressed by the Sixth Circuit: (1) where the treating source's opinion was "so patently deficient that the Commissioner could not possibly credit it"; (2) where the ALJ adopts findings consistent with the source's opinion; or (3) whether the ALJ has "met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Id.*

Under the treating source rule, the ALJ was not at liberty to dismiss a portion of Dr. Pallotta's opinion without more explanation. After making a finding that the treating source's opinions are not entitled to controlling weight, the doctrine obligated the ALJ to provide "good reasons" for the weight assigned to the doctor's opinions. Here, the ALJ provided no express reason for not giving the doctor's opinions controlling weight. However, the ALJ's error was harmless, because the ALJ's overall decision met the intended goal of the treating source doctrine, although the ALJ did not comply with the regulation in fact. A reading of the ALJ's opinion demonstrates that the ALJ adequately considered Dr. Pallotta's findings, but discounted the attendance limitation because of its lack of support and inconsistency with other medical evidence of record.

While the ALJ did not expressly indicate so, Dr. Pallotta's report appears to show that the doctor's finding of three monthly absences was based on Plaintiff's Crohn's disease and not his mental impairments. Dr. Pallotta found that Scott was seriously limited in maintaining regular attendance and being punctual within customary, usual strict tolerances. (Tr. 899). When explaining his support for this finding, the doctor indicated that "occupational limitation and performance [are] due to medical condition." (*Id.*). Later in the report, Dr. Pallotta clarified that the "medical condition" he referred to was Crohn's disease, and again indicated his belief that Plaintiff would have difficulty working at a regular job because of the effects of this aliment. (Tr. 901). The same rationale followed Dr. Pallotta's finding that Plaintiff would be absent from work three days on a monthly basis. (*Id.*). Given that Dr. Pallotta does not specialize in gastrointestinology, or a similar field, and he based his finding of monthly absences on Plaintiff's Crohn's disease, the limitation was not supported by medical evidence and the ALJ was permitted to discredit it.

13

In addition, the finding of three monthly absences is internally inconsistent with the remainder of Dr. Pallotta's opinion. Aside from attendance issues and performing at a consistent pace without unreasonable breaks, Dr. Pallotta found that Plaintiff was unlimited or very good in all other mental ability and aptitude categories. (Tr. 899). Dr. Pallotta also assigned a GAF score of 60, indicating only moderate to borderline mild symptoms.

Finally, the ALJ found that a similar limitation imposed by Mr. Weberling—that Plaintiff would miss more than four days of work each month—was entitled to little weight because the majority of medical opinions and the medical record did not support this finding. (Tr. 27). The ALJ expressly noted that state agency consultants Dr. Lawrence and Ms. Barkley found that Plaintiff was able to work, though he suffered from depression. Additionally, these sources did not opine that Scott would be absent from work due to his mental health. Thus, the undersigned finds that the ALJ's analysis of Dr. Pallotta's opinions constituted harmless error and does not require remand.

### 2. Mr. Weberling

Additionally, Plaintiff contends that the ALJ erred in granting only "little weight" to the opinions of Mr. Weberling, his treating mental health counselor. Only opinions from particular sources can establish the existence of an impairment or be given controlling weight. 20 C.F.R. § 416.913(a); SSR 06-03p ("only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight"). These sources are labeled as "acceptable medical sources," and generally refer to licensed physicians, psychologists, optometrists, podiatrists, and pathologists. 20 C.F.R. § 416.913(a)(1)-(5). Although mental health counselors do not fall under the regulations' definition of an acceptable medical source, an ALJ should consider evidence from counselors and other medical professionals because such

evidence may provide information regarding the severity of a claimant's impairment. 20 C.F.R. § 416.913(d); SSR 06-03p; *see also* Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 540-42 (6th Cir. 2007). Furthermore, Social Security Ruling 06-03p expressly confirms that the factors set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c) apply to opinion evidence from "other sources." SSR 06-03p.

Plaintiff's argument is not well taken. It is undisputed that Mr. Weberling is a mental health counselor and not an "acceptable medical source;" therefore, his opinions are not entitled to special deference. The ALJ granted "little weight" to Mr. Weberling's opinions and provided reasonable justifications for his decision. For example, the ALJ noted that Mr. Weberling's opinions were not supported by the medical evidence of record. (Tr. 27). Mr. Weberling found that Plaintiff was unable to meet competitive standards in nine areas required to perform unskilled work, including accepting instructions and responding to supervisors, getting along with co-workers, and setting realistic goals or making plans independently of others. In contrast, Dr. Pallotta, who performed a mental RFC approximately a week after Mr. Weberling, did not find that Plaintiff was limited in any of these areas. State agency reviewer Dr. Lawrence found either no limitations or only moderate limitations. In addition, Dr. Lawrence found that Scott could relate to co-workers and supervisors for regular routines without intensive interaction, and could relate to the general public on an infrequent basis. (Tr. 617). Ms. Barkley identified only moderately impaired social capabilities and noted an anger issue, but did not indicate that Scott was precluded from work. (Tr. 605). As explained previously in this opinion, Plaintiff's mental health record does not support Mr. Weberling's finding that Plaintiff would miss work more than four times per-month.

The ALJ also stated that non-medical evidence of record did not comport with Mr. Weberling's significant non-exertional limitations. For example, Mr. Weberling found that Plaintiff is seriously impaired in his abilities to interact with others. However, the ALJ noted that during the relevant period, Plaintiff had engaged in work activity, was able to shop in stores, visited others, and lived with a girlfriend. (Tr. 28, 50, 229, 265, 296). The ALJ reasonably found that these activities did not support the severe limitations that Mr. Weberling opined to. (Tr. 25). Thus, the undersigned cannot find that Plaintiff's allegation warrants remand.

### B. Step Five Finding

Plaintiff raises two allegations of error regarding the ALJ's step five finding. At step five in the sequential analysis, the Commissioner has the burden of proving there is work available in the national economy that the claimant can perform. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002). "A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (*citing Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir.1987)). But "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005)). When forming a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

16

First, Scott alleges that the frequency with which he required bathroom breaks was not identical in the RFC and the controlling hypothetical question posed to the VE. The Court disagrees with Plaintiff's allegation of error because remand of his case on the basis of this issue would prove futile. It is well established that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (*quoting Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)); *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (*quoting NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).

During Scott's oral hearing, the ALJ posed a hypothetical question to the VE with the following limitation: "access to bathroom or toilet facilities, and *from time to time*, at least a brief restroom break, such maybe unscheduled. Assume this is due to flares of the disease and not a daily occurrence." (Tr. 60) (emphasis added). The VE identified two jobs. (Tr. 63). Counsel for Plaintiff then modified the limitation to specify that the individual would need to use the restroom five times per day, and the VE indicated that no jobs would be available. (Tr. 64). In his RFC, the ALJ's limitation addressing restroom breaks required that the individual "must be able to take *occasional*, unscheduled restroom breaks." (Tr. 25) (emphasis added).

Scott claims that the ALJ's ultimate RFC finding is inconsistent with the hypothetical question, which the ALJ posed to the VE and relied upon. The Court notes that the ALJ posed a hypothetical question to the VE that stated restroom breaks from "time to time," but then described the break requirement as "occasional" in his RFC. Nevertheless, this discrepancy is immaterial. The record indicates that the VE interpreted the language of breaks from "time to

17

time" as involving less than five breaks per day, because he identified jobs under this restriction, whereas later in his testimony the VE stated that jobs would not be available to an individual who must have five unscheduled breaks in an eight hour workday. Given the VE's subsequent testimony, it would be futile to remand the case to determine what exactly the ALJ had in mind when he used the term "occasional." By finding Plaintiff capable of work, the ALJ must have intended that "occasional" breaks meant less than five. Upon remand, the final result would still be that jobs which allow for less than five unscheduled bathroom breaks would still exist, and that is sufficient to meet the Commissioner's burden of proof at step-five. Significantly, Scott does not point to any medical sources recommending restroom breaks during the workday. In conclusion, even if the ALJ mischaracterized the VE's testimony in the RFC finding, remand on this ground would be futile.

Second, Scott believes that substantial evidence supports a finding that he required at least five restroom breaks during the workday, which would preclude him from employment. Scott references a number of medical records containing his subjective complaints of frequent bowel movements and his hearing testimony as to the same. However, Plaintiff points to no physician imposing any limitations based on his complaints. An ALJ is not required to accept a claimant's subjective complaints and "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). It was the ALJ's responsibility to assess the credibility of Plaintiff's statements regarding the severity of his symptoms. *Duncan*, 801 F.2d at 853-54; *Felisky*, 35 F.3d at 1039-40. A claimant's own description of his impairments and symptoms, standing alone, is not sufficient to establish an impairment. 20 C.F.R. § 416.928(a); *see also Brady v. Comm'r of Soc. Sec.*, 1:12-CV-2175, 2013 WL 2456368, at *2-3

(N.D. Ohio June 6, 2013) (Plaintiff's complaints regarding more frequent bathroom use insufficient to establish limitation). Here, the ALJ did not fully credit Plaintiff's statements and provided sufficient reasons for failing to do so, which Plaintiff did not challenge. The ALJ noted Scott was able to go grocery shopping and engaged in some work activity throughout much of the relevant period, undermining his allegations of disability arising from the effects of Crohn's disease. (Tr. 26, 229).

Plaintiff argues that he was unable to afford maintenance treatment for his Crohn's disease, and even when treated, he required at least five restroom breaks in an eight hour workday. This argument is not well taken. The ALJ did not discredit Plaintiff based on his failure to pursue regular treatment. *See* SSR 96-7p (instructing the Social Security Administration to consider the claimant's reasons, including the inability to afford treatment, for failing to pursue regular treatment). Nor does it appear that the ALJ base his RFC finding on Scott's non-compliance.[5] After examining the medical records in Plaintiff's file, state agency non-examining consultants Drs. Juliao and McCloud found that Plaintiff could perform medium work, while taking into consideration his Crohn's disease. (Tr. 745-53, 794). The ALJ gave both of these opinions great weight. (Tr. 26). Given that substantial evidence supports the ALJ's decision, the undersigned must affirm. See *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (*citing Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)) (alteration in original).

---

[5] In his opinion, the ALJ only once referred to Plaintiff not taking medication for Crohn's disease. (Tr. 23). The ALJ made this notation when discussing his finding at step three. The ALJ wrote that along with not taking medication when admitted to the hospital in July 2009, Plaintiff also had a stable weight and multiple medical tests failed to show obstructions in his small intestine or colon during the relevant period. These observations precluded finding that Plaintiff met the relevant listing level.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: November 13, 2013.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objective has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).