```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
LONIE SCOTT, JR.,                               :        CASE NO. 1:13-CV-99
                                                :
          Plaintiff,                            :
                                                :
     v.                                         :        OPINION & ORDER
                                                :        [Resolving Doc. 1]
COMMISSIONER OF SOCIAL                          :
SECURITY ADMINISTRATION,                        :
                                                :
          Defendant.                            :
                                                :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Magistrate Judge Kenneth S. McHargh recommends this Court affirm the Social Security Commissioner's denial of supplemental security income to Plaintiff Lonie Scott, Jr.[1] Because substantial evidence supported the Administrative Law Judge's (ALJ's) conclusions and the ALJ did not abuse his discretion, the Court **ADOPTS** the recommendations of the Magistrate Judge and **AFFIRMS** the Commissioner's denial of benefits.

## I. Factual and Procedural Background

On June 9, 2009, Plaintiff Scott filed an application for Supplemental Security Income benefits alleging disability. Scott claims to suffer from Crohn's disease, plates in his left foot and right knee, depression, and vision loss in his left eye.[2]

On February 26, 2010, the Social Security Administration denied Scott's application

---

[1] Doc. 17.
[2] Doc. 14 at 26, 88, 245.

1

Case No. 1:13-cv-99
Gwin, J.

following initial review.[4] It denied the application again upon reconsideration on July 13, 2010.[5]

On September 14, 2011, ALJ Gaughen held a hearing to review Scott's claim.[6] The ALJ's decision upheld the Social Security Commissioner's denial of benefits, holding that Scott was not disabled.[7] Scott thereafter sought review in this Court, and under Local Civil Rules 72.2[8] and 16.3.1[9] the Court referred the case to Magistrate Judge McHargh for a Report and Recommendation (R&R). Magistrate Judge McHargh recommends that this Court to affirm the Commissioner's denial of supplemental security income.[10]

Scott has a significant medical record with multiple evaluations performed by various medical doctors, psychiatrists, and counselors. These practitioners' evaluations of Scott cover a relatively wide range of conclusions regarding Scott's mental and physical abilities and limitations. In aggregate, they paint the picture of a functional patient who is capable of caring for himself,[11] some interaction with others, and remembering things.[12] Scott's medical history reveals that he has some physical limitations based on periodic flare-ups of his Crohn's disease, that has led to several surgeries and emergency room visits.[11]

Through the course of evaluating Scott's employability based on his residual functional capacity (RFC), ALJ Gaughen used a vocational expert who indicated significant numbers of jobs

---

[4] Doc. 14 at 86.
[5] *Id*. at 94-104.
[6] *Id.* at 42.
[7] *Id*. at 35.
[8] *See* Local Civ. R. 72.2.
[9] *See* Local Civ. R. 16.3.1.
[10] Doc. 17.
[11] Doc 14 at 617 (describing, for example, shopping for himself, cooking his own meals, washing himself, etc.).
[12] *Id.* at 619.
[11] *Id*. at 483-1035.

2

Case No. 1:13-cv-99
Gwin, J.

in the national economy exist which Scott would be capable of performing despite the limitations imposed by his Crohn's disease.[12/] The vocational expert reviewed Scott's work history and mental/physical evaluation to determine that there are jobs available that Scott can adequately perform.

Based on the evidence presented at the hearing, the ALJ found Scott was not disabled.[13/]

On November 26, 2013, Scott objected to the Magistrate Judge's Report and Recommendation,[14/] and the Commissioner filed a response on December 3, 2013.[15/] The case is now ripe for decision.

## II. Legal Standard

To establish disability under the Social Security Act, a claimant must show that she is unable to engage in substantial gainful activity due to the existence of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[16/] Agency regulations establish a five-step sequential evaluation for use in determining whether a claimant is disabled.[17/] The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy.[18/]

The Federal Magistrates Act requires a district court to make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which an objection

---

[12/]*Id*. at 68-69.
[13/]*Id*. at 86.
[14/]Doc. 18.
[15/]Doc. 19.
[16/]*See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A).
[17/]*See* 20 C.F.R. § 416.920(a).
[18/]*See id*.

3

Case No. 1:13-cv-99
Gwin, J.

is made. The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.[19]

A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*. A district court determines only whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards."[20]

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion."[21] The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence.[22] In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility.[23] The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.[24] When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a decision different than the ALJ made.[25]

### III. Analysis

Pursuant to the specific objection requirement contained in 28 U.S.C. § 636(b)(1),[26] the Court need not address Scott's objection-in-full to the Magistrate Judge's R&R.[27] The Court therefore only reviews those objections with sufficient specificity to allow a *de novo* review of the

---

[19] *See* 28 U.S.C. § 636(b)(1).
[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).
[21] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks omitted).
[22] *See id.*.
[23] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[24] *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).
[25] *Siterlet v. Sec. of Health & Human Servs.*, 823 F.2d 918, 920 (6 Cir. 1987).
[26] 28 U.S.C. § 636(b)(1) provides that "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."
[27] *See* Doc. 18 at 1 (noting "Plaintiff objects in full").

Case No. 1:13-cv-99
Gwin, J.

record and subsequent findings.

Plaintiff Scott raises two specific objections to Magistrate Judge McHargh's R&R.[28]

Scott's first objection renews an argument initially set forth in Plaintiff's merits brief, saying that the Magistrate Judge erred by finding the ALJ's treatment of Dr. Pallotta's opinion was appropriate and the ALJ's failure to explain his treatment of Dr. Pallotta's opinion was harmless error.[29]

Scott's second objection renews another argument from his merits brief: that the ALJ erred in his step-five analysis by finding that Scott's RFC allows for the performance of substantial numbers of jobs. Scott says that the Magistrate Judge erred in agreeing with the ALJ's assessment.[30]

These objections both lose. For the below reasons, the Court overrules them and adopts the Magistrate Judge's Report and Recommendation in full.

**A.     ALJ's Analysis of Dr. Pallotta's Opinion**

Plaintiff Scott says the Magistrate Judge erred in reviewing the weight the ALJ gave Dr. Pallotta's opinion.[31] According to Social Security Ruling 96-7p, an ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."[32] Special weight must be given to the findings of the

---

[28] *See id.* at 1-3.
[29] *Id.* at 1-2.
[30] *Id.* at 2.
[31] *Id.* at 1 (referencing Doc. 15 at 16-19).
[32] *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Case No. 1:13-cv-99
Gwin, J.

claimant's treating source[33/] and their opinions are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record."[34/]

If the ALJ does not grant controlling weight to the opinion of the treating physician, he must apply the factors outlined in 20 C.F.R. § 416.927(c)(2)-(6) to assess the appropriate weight to assign to the opinion.[35/] These factors include: (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) consistency of the opinion with the record as a whole, and (6) the physician's specialization.[36/]

An ALJ's failure to apply these factors, however, will be harmless error where the claimant suffered no prejudice on the merits and was not deprived of substantial rights as a result of the ALJ's actions.[37/] And, "an ALJ's failure to cite specific evidence does not indicate that it was not considered."[38/]

In this case, the ALJ assigned great weight to Dr. Pallotta's opinion relating to Scott's psychiatric evaluation, but disregarded other portions of Dr. Pallotta's opinion. That is, the ALJ gave weight to Dr. Pallotta's Global Assessment of Functioning score of 60, major depressive

---

[33/]See *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).
[34/]20 C.F.R. § 416.927(c)(2).
[35/]*Wilson*, 378 F.3d at 544.
[36/]*Id.*, 378 F.3d at 544.
[37/] The Sixth Circuit recognizes that "[i]t is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (citations omitted). Generally, decisions of administrative agencies should be reviewed for harmless error, such that further administrative proceedings are not appropriate unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Id.* (citations omitted).
[38/]*Simons v. Barnhart*, 114 F. App'x, 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Case No. 1:13-cv-99
Gwin, J.

disorder diagnosis, and found he had moderate impairments in concentration, persistence, and pace.[39] The ALJ, however, disregarded without comment the portion of Dr. Pallotta's opinion that indicated Scott may miss three days of work each month due to the physical effects of his Crohn's disease.[40]

As the Magistrate Judge noted, the ALJ erred in discounting Dr. Pallotta's opinion without comment because the ALJ failed to provide "good reasons" for giving reduced weight to other parts of the treating source's opinion.[41]

Under the treating source doctrine, however, the Sixth Circuit has recognized circumstances where an ALJ's failure to provide "good reasons" may be harmless, including: (1) where the treating source's opinion was "so patently deficient that the Commissioner could not possible credit it;" (2) where the ALJ adopts findings consistent with the source's opinion; and (3) whether the ALJ has "met the goal of § 1527(d)(2) - the provision of the procedural safeguard of reasons - even though she has not complied with the terms of the regulation."[42]

Despite the ALJ's failure to provide "good reasons" for giving different weights to the various parts of Dr. Pallotta's opinion, the Court finds that the evidentiary record and the balance of the ALJ's opinion show that this error is harmless. The ALJ's overall decision met the intended goal of the treating source doctrine, even though the ALJ did not comply with the regulation in fact.

The Court finds that the ALJ's opinion demonstrates that the ALJ adequately considered Dr.

---

[39] *See* Doc. 14 at 914.
[40] *See id*. at 27.
[41] 20 C.F.R. 416.927(c)(2).
[42] *Wilson*, 378 F3d at 546.

7

Case No. 1:13-cv-99
Gwin, J.

Pallotta's findings but discounted his opinion about Scott's potential absences because of its lack of support and because Dr. Pallotta's assessment of the attendance implications of Scott's Crohn's disease runs contrary to the manifest weight of the evidence.

Dr. Pallotta's evaluation that Scott would miss three days of work each month is not grounded in an area of medicine in which he specializes. Dr. Pallotta is a psychiatrist, not a gastroenterologist. As the Magistrate Judge found, based on Dr. Pallotta's clinical specialization as a psychiatrist, the ALJ's decision to give greater weight to the psychiatric evaluation while discounting Dr. Pallotta's evaluation of Scott's physical condition was reasonable considering the substantial amount of contradictory evidence in the record from other evaluating sources.[43]

Based on the above factors and analysis, the Court finds the Magistrate Judge correctly concluded that Dr. Pallotta's assessment of the limitations stemming from Scott's physical condition were not well-supported by medically acceptable clinical and laboratory diagnostic techniques. Because the doctor's assessment is not consistent with the other substantial evidence in the case record as the Magistrate Judge found, the ALJ's treatment of Dr. Pallotta was appropriate. As such, the ALJ's failure to explain his discounting of Dr. Pallotta's opinion regarding Scott's likely absences has not prejudiced Scott on the merits or deprived him of substantial rights. Therefore, this Court agrees with the Magistrate Judge that the ALJ's error was harmless and overrules Scott's objection.

B.  **ALJ's Step-Five Analysis**

---

[43] *See, e.g.,* Doc. 14 at 623 (Dr. Wilson indicating Scott "is well-developed, well-nourished, alert white male in no obvious distress, seems of average intelligence, functioning well" and that physical evaluations of past injuries are positive), 631 (Dr. Lawrence indicating Scott "[c]an persist with simple and detailed tasks, maintain a consistent pace with a reasonable number and length of rest periods"), 802 (Dr. Katz indicating only mild to moderate degree of functional limitation), and 795 (a note in Dr. McCloud's medical file from a registered nurse indicating that while Scott is on his medication, he does not have much trouble with diarrhea).

8

Case No. 1:13-cv-99
Gwin, J.

Plaintiff Scott claims the Magistrate Judge erred when he conclude that the ALJ's step-five finding that Scott's RFC allowed for the performance of substantial numbers of jobs was appropriate.[44]

The Court disagrees.

The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."[45] At step five, the ALJ must analyze whether work exists in the economy that an individual can perform and "[e]ven if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled."[46] This step of the analysis places the burden on the Commissioner to prove there is work available that the claimant can perform.[47]

In this case, the ALJ relied on the analysis and testimony of a vocational expert to assess the availability of work based on a hypothetical scenario of someone in Scott's condition.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."[48] Hypothetical questions, however, need only incorporate those limitations that the ALJ accepts as credible.[49]

The vocational expert's analysis in Scott's case was based both on a first-hand analysis of

---

[44] Doc. 18 at 2.
[45] 20 C.F.R. § 416.920(a).
[46] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).
[47] *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002).
[48] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).
[49] *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Case No. 1:13-cv-99
Gwin, J.

Scott's personal work history and an assessment based on hypothetical questions posed by the ALJ and Scott's counsel.[50] Specifically, the ALJ's hypothetical question included several limitations: (1) the ability to do light or medium work if given a sit/stand option; (2) no need to work in temperature or humidity extremes; (3) unscheduled access to bathroom facilities from time to time (though not daily) during flare-ups of Crohn's disease.[51] It did not include a restriction of daily unscheduled access to bathroom facilities on a frequent basis.

In response, the vocational expert indicated three categories of work available for Scott: hand packager, end sorter, and machine operator. The vocational expert indicated all three categories provide for substantial numbers of jobs within the national economy.

Plaintiff's counsel requested the inclusion of the additional restriction of having unscheduled access to bathroom facilities five-to-ten times on a daily basis.[52] Considering this restriction on top of the ALJ's hypothetical, the vocational expert concluded that no jobs existed in the national economy that could be performed by an individual with such a need.[53]

This Court finds that the Magistrate Judge correctly found that substantial evidence in the record supports the ALJ's decision to base his discussion on this version of the hypothetical without placing the additional limitations of a need for unscheduled bathroom breaks five-to-ten times daily, as Plaintiff's counsel suggested. None of the evaluations conducted by any of the physicians in the record predict the number of times Scott would need to relieve himself.

And, the only indication of the frequency with which Scott needs to use the bathroom was

---

[50] Doc. 14 at 65-66.
[51] *Id*.
[52] *Id*. at 64.
[53] *Id.*

Case No. 1:13-cv-99
Gwin, J.

that offered by Scott himself. As the Magistrate Judge found, the ALJ appropriately discounted this testimony from Scott based on Scott's failure to point to any physician imposing limitations based on his complaint and based on the facts that Scott was able to go grocery shopping and engage in some work activity throughout the relevant period.[54]

Based on this analysis, the ALJ's hypothetical question and the vocational expert's answer adequately reflected Scott's impairments and the resultant employment opportunities available to Scott. The Court, therefore, overrules Scott's objection on this issue.

### IV. Conclusion

The Court has reviewed the Magistrate Judge's other recommendations and finds them correct. For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge McHargh and **AFFIRMS** the Commissioner's denial of benefits.

IT IS SO ORDERED

Dated: February 19, 2014          s/ *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE

---

[54] See Doc. 17 at 18.

11